The State of Missouri v. Mathews.

THE STATE OF MISSOURI, Respondent, *v.* WILLIAM MATHEWS, Appellant.

44 523
100 445
44 523
41a 339
44 523
102 537
44 523
124 627
44 523
128 441
44 523
172 2252

1. *Insurance companies — Act of March 10, 1869 — Information touching business of companies, failure to give — Penalty for.* — The *qui tam* action provided by section 43 of the act of March 10, 1869, for the incorporation of insurance companies, etc. (Sess. Acts 1869, p. 60), for violation of the act by such companies, is not exclusive. That section refers generally to all violations of the act. But when parties fail to comply with or violate section 13 of the act "to create an insurance department" (Sess. Acts 1869, p. 23), requiring insurance companies to give information to the State superintendent of insurance touching their business, they are liable to be proceeded against for misdemeanor, under that section.

2. *Insurance companies — Act of March 4, 1869 — Title of statute — Constitution.* — Section 13 of the act entitled "An act to create an insurance department" (Sess. Acts, 1869, p. 23), in substance, required insurance companies, on demand, to give the State superintendent of insurance, information touching their business, and, for failure to furnish the same, made the party offending guilty of misdemeanor, and subject to fine and imprisonment. *Held,* that the said section was not in violation of section 32, art. IV, of the State constitution as relating to a subject not included in the title of the act. It was necessary, in order to carry out the act, to empower the superintendent to obtain such information ; but the power would have been fruitless without the authority to enforce it.

3. *Constitution — Section 32, art. IV. — Intention of.* — Section 32, art. IV, of the State constitution was intended to effectually inhibit the putting of diverse subjects in the same bill.

4. *Insurance companies — Act of March 10, 1869 — Title of — What companies embraced in.* — An act entitled "An act for the incorporation of insurance companies and other than life insurance companies, and for the regulation of insurance business, other than life assurance business" (Sess. Acts 1869, p. 45), comprehends fire and marine insurance companies.

5. *Insurance companies — Act of March 4, 1869 — U. S. constitution — Contracts — Impairing obligation of.* — A fire and marine insurance company was chartered prior to the passage of the act of March 4, 1869, "to create an insurance department." *Held,* that section 13 of that act requiring insurance companies, on demand, to furnish the State superintendent of insurance with information touching their business was not in violation of the constitution of the United States, as impairing the obligation of the contract between the State and the company, arising from the charter. Corporations, like natural persons, are subject to those laws which the State may prescribe for the good government and regulation of the community, and the protection of the citizen. The power of the State to prescribe such laws is inherent in every sovereignty, and can not be surrendered even in the granting of a charter.

*Appeal from St. Louis Court of Criminal Correction.*

*Hill & Jewett*, for appellant.

*Johnson*, Attorney-General, and *Hitchcock & Lubke*, for respondent.

I. The act of March 10, 1869 (Sess. Acts 1869, p. 45), does not relate to more than one subject, and that subject is properly expressed in the title. (City of St. Louis v. Tiefel, 42 Mo. 578; People v. Mahoney, 13 Mich. 495; Davis v. Bank of Fulton, 31 Ga. 69; McAunich v. Mississippi R.R. Co., 20 Iowa, 338; Robinson v. Skipworth, 23 Ind. 311; O'Leary v. Cook, 28 Ill. 534; People v. Lawrence, 36 Barb. 177; Johnson v. Higgins, 3 Metc., Ky., 556.)

II. It does not impair the obligation of a contract. (Bank of Columbia v. Attorney-General, 3 Wend. 588; Commonwealth v. Farmers' & Mechanics' Bank, 21 Pick. 542; Gorman v. Pacific R.R. Co., 26 Mo. 441; Thorpe v. The Rutland R.R. Co., 1 Will. 141; Lyman v. Boston & W. R.R. Co., 4 Cush. 288; Norris v. The Androscoggin R.R. Co., 39 Me. 275; New Albany & Salem R.R. Co. v. Tilton, 12 Ind. 3; Illinois Central R.R. Co. v. Swearingen, 33 Ill. 289.)

III. The remedy given by section 43 of said act is not exclusive of the ordinary remedy, by information or indictment, for misdemeanors committed by violations of the provisions thereof.

WAGNER, Judge, delivered the opinion of the court.

The defendant, who is president of the Excelsior Insurance Company, was prosecuted and convicted in the Court of Criminal Correction for a violation of the insurance laws of this State. It is agreed that the Excelsior Insurance Company is a company for insuring fire and marine risks, and was chartered by the Legislature several years prior to the passage of the general insurance law now in force, and that the act of incorporation exempted it from the operation of the statutes of 1855, subjecting corporate charters to legislative repeal, alteration, or amendment. The prosecution was commenced under the thirteenth section of the act

" to create an insurance department," and which gives the superintendent power to investigate and inquire into the business of insurance transacted in this State, and which declares that any person who shall refuse to give the necessary and requisite information when thereto demanded, shall be guilty of a misdemeanor, and be subjected to a fine and imprisonment. Under the division in the law, entitled "an act for the incorporation of insurance companies other than life assurance companies, and for the regulation of insurance business other than life assurance business," the twenty-third section makes it the duty of the president, or vice-president and secretary, or a majority of the directors, of every insurance company organized under the act or laws of this State, to make a report of its condition to the superintendent, within a given time. The section specifies particularly what the report and statement shall contain. The forty-seventh section requires every company organized by or incorporated under the laws of this State, to file the first statement, as mentioned in the twenty-third section, with the superintendent within ninety days after the passage of the act. The defendant refused to make and file the statement or give the required information. Before disposing of the main issues which arise in this cause, I will notice a preliminary point which has been pressed upon our attention, and that is whether this proceeding is not misconceived, and whether an information will lie. The forty-third section of the act last referred to provides that every violation of the act shall subject the party violating to a penalty of five hundred dollars, which shall be sued for and recovered in the name of the State of Missouri, by the attorney-general of the State, or circuit attorney of the circuit in which the company or agent, or agents, so violating shall be situated; and one-half of such penalty, when recovered, shall be paid into the treasury of the State, and the other half to the informer of such violation. It is insisted that this remedy is exclusive, and the only remedy that can be resorted to for a violation of the law. But this position is clearly untenable. The section refers to all violations of this act, and not particularly to the especial provisions we are now considering. The act "to create an insurance department" defines the duties

and powers of the superintendent. It invests him with certain authority and power necessary to enable him effectively to execute and enforce the law, and make it subserve the object for which it was passed. For the purpose of obtaining information and thoroughly understanding the condition of insurance companies, they were required to furnish him with certain statements and facts ; and a refusal to comply with that duty was made a misdemeanor. Therefore, whenever they fail to comply with or violate the provisions of the said thirteenth section, they are liable to be proceeded against for a misdemeanor. The *qui tam* action provided for in the forty-third section may be used in case of other violations, and possibly may be regarded as a cumulative remedy ; but it is not necessary to express any positive opinion upon that point. For a reversal of the judgment, it is contended that the provisions of the law under which the conviction took place are unconstitutional : first, because they relate to a subject not included within the title of the act applicable to this case ; second, because the duties and burdens devolved on the appellant's company are an impairing of the obligation of a contract. As to the first point, the constitution declares that no law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title (Const. Mo., art. IV, § 32). In the case of the City of St. Louis v. Tiefel, 42 Mo. 578, we had occasion to examine this question with some care, and have seen no reason for departing from the conclusions there arrived at, or to change the construction then placed upon the clause. In that case the title was "An act amendatory of an act to enable the city of St. Louis to procure a supply of wholesome water." The act, after authorizing the board of water commissioners to require owners of buildings to take out water licenses, went on to provide, in substance, that parties who failed or neglected to comply with its provisions, should be subject to certain penalties, and enacted how the penalties should be recovered. These provisions, we held, related to the subject embraced within the title, and were congruous and connected with it, and were entirely valid. The question in that case and the present one is precisely analogous. The board of water commissioners were invested

with certain powers, and the penalty was essential to make those powers effectual. So, in the organization of the insurance department, it was necessary, in order to carry out the act, to empower the superintendent to do certain things; but the power would have been fruitless without authority to enforce it. To say that a separate chapter must be enacted for every provision in the framework of a law, with a distinct title, would be almost impossible and wholly ridiculous.

In Michigan, where the same constitutional provision exists, it was held that the title of "an act to establish a police government for the city of Detroit" was not objectionable for its generality, and that all matters properly connected with the establishment and efficiency of such a government, including taxation for its support, and courts for the examination and trial of offenders, might constitutionally be included in the bill under this general title. (People vs. Mahoney, 13 Mich. 495.) Suppose the Legislature should pass an act entitled "An act to incorporate the city of St. Louis," would it be necessary, by a separate act, to provide for the organization of a police court, and then by another act to provide for taxation, and so on for all the other departments necessary for a city government? Most assuredly not. Yet this is what the narrow construction contended for would lead to. Such a view would produce an endless multiplicity of bills, and would cripple, retard, and impair legislation. The provision is one of the wisest to be found in the constitution, and was intended to effectually inhibit diverse subjects being put in the same bill, by means of which great frauds were committed and dishonest combinations formed. So that the matter is germain, connected and congruous, and relates to the same subject, the generality of the title will not be objectionable. I agree with the New York Court of Appeals that "there must be but one subject; but the mode in which the subject is treated, and the reasons which influenced the Legislature, can not and need not be stated in the title, according to the letter and spirit of the constitution." The title "to create an insurance department" was sufficient to cover the section providing for a penalty for violating the law. It was a part of the

same subject, and absolutely necessary to carry it into effect. The same reasoning applies to the other division of the insurance law. The title is "for the incorporation of insurance companies other than life assurance companies, and for the regulation of insurance business other than life assurance business." No person reading this title would misapprehend its real meaning or be misled as to the subject treated of in the chapter. It includes all business and all companies other than life insurance companies and business, and therefore comprehends the defendant's company. The next question is, is the law objectionable, when applied to defendant's company, as impairing the obligation of a contract? It is settled law that a private charter is a contract between the government and the company to which it is granted, and that, as such, it is secured by the constitution of the United States from violation by the State conferring it. But, while private charters are thus protected in their franchises, and are secured against an infringement of their rights, it is also true that corporations, like individuals or natural persons, are subject to those laws which the State may prescribe for the good government and regulation of the community and the protection of the citizen. In New York, the Legislature enacted a law that it should and might be lawful for the attorney-general of the State, and it was made his duty, whenever an incorporated bank was insolvent or had violated any of the provisions of the act incorporating it— and it was also made lawful for any creditor of any such company—to apply by petition to the court of chancery, setting forth the facts and circumstances of the case; and, upon its being proved to such court that such company was insolvent, or that it had violated any of the provisions of the act incorporating it, or any other act binding upon it, it should and might be lawful for such court to issue an injunction to restrain the company and its officers from exercising any of the privileges and franchises granted by the act incorporating it, or by any other act, and from collecting or receiving any debts, and from paying out or transferring any of the moneys or effects of such company, until such court should otherwise order; and it was made lawful for such court to appoint a receiver of the property, moneys, and

effects of the company, and to distribute the same among the fair and honest creditors thereof. The Court of Errors, the highest court of judicature in the State, held that the act was valid, and not an unconstitutional law, in respect to incorporations granted previous to its passage. (Bank of Columbia v. Attorney-General, 3 Wend. 588.) A question nearly parallel with the one in the present case arose in Massachusetts. There the statute enacted that bank commissioners should be appointed by the governor; that they should visit the banks, and should have free access to their vaults, books, and papers, and should make all such inquiries as might be necessary to ascertain the condition of the banks and their ability to fulfill their engagements, and whether they had complied with the provisions of law. And the commissioners were empowered to summon and examine, under oath, the officers and agents of the banks in relation to their transactions and business. And the act provided that any officer or agent who should refuse, without justifiable cause, to appear and testify when thereto required, should be subject to fine and imprisonment. It was held that the law applied to all banks existing as well before as after its passage, and that it was no infraction of the constitution — Shaw, C. J., saying: "But such immunities and privileges do not exempt corporations from the operation of those laws made for the general regulation and government of the citizen. If a law is made fixing the rate of interest, and what shall be deemed usury and its legal consequences, corporations, as well as individuals, must conform to it." (Commonwealth v. Farmers' & Mech. Bank, 21 Pick. 542; Com. Bank of Rodney v. State, 4 Sm. & M. 439.)

The laws passed in the different States requiring railroad companies to erect fences along the line of their track, have been upheld on the ground that they were in the nature of police regulation, and applied to all roads, whether chartered and in operation before the laws were passed or not. (Gorman v. Pacific R.R., 26 Mo. 441; New Albany & Salem R.R. v. Tilton, 12 Ind. 3; same v. Maiden, id. 10; see also Illinois Central R.R. v. Swearingen, 33 Ill. 289.)

Those laws are not passed exclusively for the protection of

owners of stock, but for the security and safety of passengers, whose lives are endangered by accidents which would be likely to occur in consequence of stock being on the road. Corporations are, and of right ought to be, as much subject to police regula- tions as natural persons. The injury resulting from violations of law by them may be even greater than where the infraction comes from individuals. It is the duty of the State to protect her citizens in all their rights; and this power, inherent in every sovereignty, can not be surrendered even in the granting of a charter. In these days, when corporations are multiplied to an almost endless extent, when the business of insurance has swelled into enormous magnitude, when corporations have received large premiums and failed to pay their losses on account of misman- agement and insolvency, it is simply justice to the community that thorough regulations should be adopted for its protection. The insurance laws of this State were intended to furnish such protection, by investing the superintendent with sufficient power to institute an examination into the affairs and management of the various companies doing business within our territorial limits. If the examination proves satisfactory, the people can then rely upon their safety and patronize them with confidence; if they are shown to be unreliable and unsafe, the proper steps may be taken to place them in liquidation, and their power for defrauding the public will cease. We find no objection to the law on any ground that has been urged against it.

The judgment will therefore be affirmed. The other judges concur.