CELSUS PRICE, Superintendent, etc., Appellant, *v.* ST. LOUIS MUTUAL LIFE INSURANCE COMPANY, Respondent.

### January 29, 1877.

1. Sections 19, 20, 22, and 41 of the " Act for the incorporation and regulation of life insurance companies " are general regulations for the protection and security of the citizen, in no way impair the obligation of a contract, and may apply as well to insurance companies organized under a special charter as to those organized under the general law.

2. A life insurance company which has reinsured all its risks, and has ceased to take other risks, but which is receiving premiums on old policies and paying losses, is transacting such a business of life insurance as may be the subject of injunction under the statute.

3. Where the allegations of the petition are not clear and precise, but are defective or ambiguous, if the court has complete jurisdiction of the matter and the parties it should not dismiss the cause, but should permit plaintiff to amend.

4. When a risk is reinsured, no privity ensues between the first insured and the reinsurer, and such reinsurance gives the first insured no rights as against the reinsurer.

5. The rights of dissenting policy-holders cannot in any way be affected by virtue of a reinsurance by the first insurer.

6. The right of a mutual life insurance company to reinsure does not carry with it a power to sell or transfer all their property against the will of a minority of the policy-holders, and a contract to so sell or transfer is, as against dissenting policy-holders, *ultra vires* and void.

Appeal from St. Louis Circuit Court.

*Reversed and remanded.*

*Frank J. Bowman*, for appellant, cited: Wag. Stat. 735, sec. 13, p. 738, sec. 1, p. 753, sec. 41; Sess. Acts 1869, pp. 27, 40; The State *v.* Matthews, 44 Mo. 524–530.

*Davis & Smith* and *G. A. Madill*, for respondent, cited: Wag. Stat., ch. 76, art. 2, secs. 1, 41.

*Farish & Griffin* and *W. L. Scott, amici curiæ*, cited: The State *v.* Lawrence, 45 Mo. 492; Batchelor *v.* Bess, 22 Mo. 402; Sess. Acts 1861, p. 158; The State *ex rel. v.* Woodson, 41 Mo. 231; Story's Eq. Pl., sec. 10; Mays *v.* Biggs *et ux.*, 3 Head, 38.

*J. M. Semple, amicus curiæ*, cited: Fithian *v.* Monks, 43 Mo. 502.

Hayden, J., delivered the opinion of the court.

This was a proceeding under the act for the incorporation and regulation of life assurance companies (Acts 1869, p. 26; Wag. Stat. 738), instituted by the superintendent of the Insurance Department to restrain the respondent from doing further business as a life insurance company, and to wind up its affairs. On December 17, 1876, the appellant filed his petition in the court below, in which he averred that on December 15, 1873, the Mound City Life Insurance Company, a corporation incorporated under the laws of this State, entered into a pretended contract of reinsurance, by which, in consideration of a pretended assignment to it of the assets of respondent, it agreed to reinsure the risks of the respondent; and appellant annexed a copy of the contract and made it part of his petition. The appellant further averred that, having good reason to suspect that the

affairs of the respondent, which was then doing business in this State as a life insurance company, incorporated under its laws, by and through the Columbia Life Insurance Company (averred to be the Mound City Life Insurance Company by change of name), were in an unsound condition, he required of respondent a special statement of its affairs, and was by the president referred to the president of the Columbia Life Insurance Company; that, a special statement of the affairs of respondent being furnished, the appellant, not being satisfied that the affairs of respondent were or could be in a safe condition, appointed a disinterested person to make a personal examination into the affairs of the respondent, whose report, showing the condition of the affairs of the respondent, is annexed to the petition. The petition then states that the assets of the respondent on December 1, 1876, were $909,233.66; that there is due to policy-holders, for death-claims and endowments, $161,202.68; that the policies in force amount to about $7,300,000; sets forth that a large number of suits are pending against the respondent; that its assets are being so rapidly diminished as to render its further proceedings hazardous to the public and its policy-holders; and prays for an injunction to restrain the respondent from further proceeding with its business, that a receiver be appointed to take possession of its property, etc.

The respondent, in its answer, admits the contract with the Mound City Life Insurance Company; says that the respondent has no knowledge or information sufficient to form a belief as to whether the appellant had good or any reason to suspect that the affairs of the respondent were in an unsound condition; admits that many suits are pending against the company for premiums, and denies that its assets are being so rapidly diminished as to render its further proceedings hazardous to the public or to its policy-holders. The answer then sets up that, under powers in its charter expressed, and being in 1873 prohibited by order of the court below,

at the suit of the then superintendent of the Insurance Department of this State, from doing any further new business, it made the contract of reinsurance annexed to the petition ; says that that contract was lawful, fair, and reasonable, and made to secure the payment of its policies with a sound and able company, was approved by the then superintendent of insurance and by the court below, and alleges that it has been fully kept and performed by the respondent, and, up to the institution of the present suit, by the reinsuring company ; that since the date of the contract all legal claims upon respondent have been promptly met ; and ends by denying the jurisdiction of the court below, on the ground that respondent has ceased to do new business, to assure lives, or to dispose of or purchase annuities or endowments, and on the ground that, having reinsured all its risks, it is not subject to the provisions of the 41st section of the above-named act.

The plaintiff filed a motion for judgment upon these pleadings, which motion the court overruled. The court then dismissed the petition ; whereupon the appellant filed a motion to set aside the order of dismissal, on the ground that the court erred in dismissing the case, and that, in any event, the plaintiff was entitled to amend his petition.

The contract annexed to the petition provides, in substance, that the St. Louis Mound City Life Insurance Company reinsures all outstanding risks of the St. Louis Mutual Life Insurance Company, and guarantees their prompt payment to the policy-holders, and assumes all liabilities of every kind of the St. Louis Mutual Life Insurance Company, and agrees that policy-holders and creditors may enforce their demands against the reinsuring company precisely as they might have done against the company originally liable ; and covenants to indemnify the St. Louis Mutual Life against any demands whatsoever existing at the date of the agreement. The reinsuring company is to issue to the stockholders of the original company stock of the reinsuring com-

pany equal in amount, at its par value, to the par value of the stock which is to be thus replaced, subject to such set-offs as exist against the original stock; the stockholders in the company reinsured, to subscribe for stock in the reinsuring company, which is to be paid by their stock in the company reinsured, and no exchange of stock to be made in cases where no such subscription is made. The stockholders in the reinsuring company are to be paid the par value of their new stock at the expiration of twelve months, if they make demand at that time; and the reinsuring company may tender, at any time within twelve months, to the several stockholders of the company reinsured, the par value of the new stock; and, if they do not accept it when offered, the person so refusing forfeits all right to be paid the par value of his stock. The reinsuring company agrees to secure an increase of its capital stock to $1,000,000, to be subscribed by responsible persons and secured according to law, within sixty days, this increase to include the $100,000 par value of the new stock, and all to be approved by the State superintendent of insurance. The reinsuring company agrees that its actual surplus is $400,000, and that it will file its annual report as required by law, exhibiting such surplus. And the company reinsured covenants that its last statement of October 27, 1873, is a fair exhibit; and that it has not since disposed of any of its property, except in the regular course of business; and that it will, on delivery of the agreement, sell and transfer to the reinsuring company, by sufficient conveyances, all its property, at the expense of the reinsuring company, with covenants of special warranty only. The agreement in duplicate to be approved by the State superintendent of insurance and by Judge Madill of the Circuit Court, and to be deposited with W. E. Burr as an escrow; and delivery of the agreement to be made only when the superintendent of insurance shall certify that the stock has been duly subscribed as provided, and the subscriptions paid or secured. If this is not done within sixty

days, the agreement is to be cancelled. The company re-insured is to proceed with its business, in its regular course, until the agreement is carried into effect, and the transfer of property made according to its terms.

The first question which arises in this case is whether the court below had jurisdiction of the proceeding against this respondent. If it had not, the court was authorized to dismiss at any stage of the case. This question involves the inquiry whether the defendant is subject to the provisions of the act for the incorporation and regulation of life insurance companies; and especially of the 41st section of that act. The respondent contends that, as it exercises its powers by virtue of a special charter (Acts 1861, p. 158), it is exempt from the provisions of the general act. But it is clear, from the language of the general law, that the Legislature intended that some of its provisions should apply as well to life insurance companies incorporated under special acts as to those organized under the general law. Secs. 19, 20, 22, 41. There can be no question as to the intention; nor can there be any question as to the power of the Legislature to make the provisions of the 41st section applicable to companies in the situation of the respondent. The provisions in question are general regulations for the protection and security of the citizen, made by the Legislature in the exercise of its powers of supervision and superintendence, and in no way impair the obligation of a contract. *Curtis* v. *Whitney*, 13 Wall. 68; *Ochiltree* v. *Railroad Co.*, 21 Wall. 249; *The State* v. *Matthews*, 44 Mo. 523; *The State* ex rel. v. *King*, 44 Mo. 283.

What averments, then, are necessary to be made under the 41st section in order to bring the case within the statute? Respondent contends that the petition does not show that the respondent was doing business, at the time of the filing of the petition, within the terms of the act; nay, more, that the petition, by its language and by the contract made part of it, shows that the respondent had ceased to do busi-

ness, and was not amenable under the section. The words cited by respondent, " doing business in this State," in the fourth line of section 41, do not bear on this question. These words are used in the disjunctive, in opposition to the words " incorporated under the laws of this State," as is shown by the same words used further on in the section, where companies " doing business in this State " are spoken of as " companies not incorporated by the laws of this State." This part of the statute divides into two classes all companies subject to its provisions : first, those incorporated under the laws of this State ; second, those doing business in this State and not incorporated under its laws. The words of the section which bear on this question are : " If upon any such examination it shall appear to said superintendent that any company created by or organized under any law of this State and doing any business mentioned in the first section of this act is insolvent, or that its condition is such as to render its further proceedings hazardous to the public or those holding its policies, he shall file " a petition, etc. The business mentioned in the 1st section of the act is the business of life insurance and business connected with it, such as life insurance companies especially do. The reference is general, and the particular words of the 1st section are not referred to, but its substantial meaning. Accordingly, the above-quoted clause would seem to mean " any company organized under any law of this State and doing any business " of life insurance or business connected therewith, such as life insurance companies especially do. But the words a little further on aid greatly in explaining what the Legislature means. They show that the intent is to protect, not merely the public generally, who have not, but may, become policy-holders, but also those who have already become policy-holders. The words are, " hazardous to the public, *or to those holding its policies.*" If, then, we suppose the case of a company issuing no new policies and making no new assurances, but which has policies outstand-

ing on which it is receiving premiums and paying losses, would not such a company, within the words of the act, be "doing any business" of life insurance or business connected therewith, such as life insurance companies especially do? And, provided its condition was such as to render its proceedings hazardous as to policy-holders, would not they be the very persons whom it is the office of the act to protect? Surely the fact that the company has ceased to take new risks cannot be invoked to deprive existing policy-holders of the benefits of an act passed as much for their protection as for that of the non-policy-holding public. It would seem that the act itself considers that companies which have policies outstanding on which they are receiving premiums and paying losses are engaged in business; and, as if to cover the case, it uses the broad words "doing any business." That is the best construction of an act, other things being equal, which gives to every word its appropriate force; and where, as here, the reason of the rule and the words of the act correspond with each other, the argument is doubly strong to prove the legislative intent.

Moreover, the argument that the act does not apply because the company is doing no new business virtually begs the question. The payment of new premiums by which policies are kept alive, and the payment of new death losses by which policies are discharged, is not business which has ever been done before; and it is business of life insurance, and such as life insurance companies especially do. There would certainly be some scope for the operation of a writ of injunction which should restrain a company so acting from "further proceeding with its business."

But it is said the petition does not contain even any general averment to the effect that the respondent was, at the date of the filing of the petition, doing the business described in the 1st section of the act; that it does not even aver that the respondent was doing any business as a life insurance company. The petition is, indeed, singularly

bare of any direct averment in respect to this essential matter. But it does incidentally allege that the respondent was doing business in this State "in manner as aforesaid, by and through the Columbia Life Insurance Company." This allegation, in itself not easily understood, must be taken in connection with the averments as to the contract of December 15, 1873. This contract is made part of the petition, and may be considered as set forth in it. Thus it becomes necessary to consider the legal effect of this contract. This, too, we are bound to consider, irrespective of the question of pleading, because, as the answer admits the execution of the contract, if it appears that, on all the facts as they were before the court below on the motion for judgment, the court had jurisdiction, it should have permitted the plaintiff to amend his petition, and should not have dismissed the case.

The contract, or the material part of it, is given above. By it the respondent agrees to sell, transfer, and deliver all its property and assets to the Mound City Life Insurance Company, and the latter, on its part, agrees to reinsure, and states that it does reinsure, all the risks of the respondent, and further agrees to pay all its debts and liabilities. It would seem that it was the intention of the parties that all the business as well as all the assets of the respondent should be turned over to the Mound City Company. The respondent wished to get rid of every possible obligation, present or contingent, and substitute the Mound City for itself; and for this purpose was willing to turn over all its property. Perfectly correct motives may have actuated the directors; and they may have thought they were making an arrangement highly beneficial for policy-holders as well as for the stockholders. But the question of the legal right to make such a contract, and by it to bind the policy-holders, is another matter. The law does not compel a person to be benefited against his will. He may resist the attempts of those who have contracted with him to

do him good in a way different from that which the contract calls for, and insist on having his mere legal rights. Persons in the situation of these policy-holders cannot be turned over to a third party with whom they have not contracted. They never assented to the agreement, and the statute has a clear field of operation as to them. So far as they are concerned, the business of the company is as active as it ever was. Nor does it avail to insist that the contract by which all the property of the respondent is turned over is a contract of reinsurance. The argument implies a misunderstanding as to the nature of this kind of contract. When a risk is reinsured, no privity ensues between the first insured and the reinsurer. The reinsurance gives the first insured no rights as against the reinsurer. He has a remedy against his own insurer, and against him alone. This is well settled, and it would be unnecessary to state so plain a principle if the argument of the respondent did not seem to imply that the obligations of the respondent to its dissenting policy-holders are in some way destroyed or lessened by virtue of the reinsurance. The respondent claims, however, that it had a perfect right to make this contract by reason of the 2d section of its charter. This section, after giving the power to make all manner of agreements for insurance of the lives of persons, and policies of insurance for the insurance of human life, continues as follows : " And may do and perform generally every act and thing to the business of life insurance belonging or in anywise appertaining ; and may reinsure said corporation, or cause the same to be reinsured, against loss on or by any risk or risks which shall have heretofore been taken, or which may be hereafter taken, by said company." The power of disposing of all of the assets of said company, and depriving the policy-holders of the property contributed by them, and in which they have a common interest, might as well be claimed under the clause first above quoted as under the second clause. Taking the words of the first clause in their widest possible latitude, and

refusing to apply to them the established rules of legal construction, it could be said that the power to do any act and thing to the business of life insurance in anywise appertaining carries with it the power to sell and transfer the property and business of one life insurance company to another. But probably the respondent would not claim any such power under the first clause. All such clauses must be interpreted *secundum subjectam materiam;* and the loose verbiage of acts drawn up in a style like that of the present charter makes more imperative the application of the legal rule. The power to reinsure is coupled in the charter with the power to insure; and both are given as powers necessary to carry on the business of life insurance. Reinsurance, its object and effect, are things well known in law. The power enables a company to successfully carry on the business, and to prosper when it otherwise might fail, by procuring other companies to share in risks which are too large or too hazardous for the reinsured to bear alone. The less does not include the greater, or the incident carry with it the principal; nor under a power to reinsure can a company convey away all of its property and deprive itself of the power to insure. It is safe to say that the Legislature, where it intends to give a mutual insurance company the power to close its business, to dispose of its assets, and to transfer its policy-holders over to a stranger company, does not do so under the grant of a power to reinsure.

The general rule is that the officers of a corporation cannot, against the wishes of a minority of the stockholders, convey away the entire property which is essential to carry on the business of the company. There are some exceptions to this rule, in cases of private corporations of a strictly business character, in the management of which neither the State nor the public has any direct interest. *Buford* v. *Keokuk Northern Line Packet Co.*, *ante*, p. 159; *Treadwell* v *Salisbury Mfg. Co.*, 7 Gray, 404. These exceptions, how-

ever, have no bearing on the present case. The question here is whether the transfer is good as against policy-holders in a mutual insurance company for the insurance of lives, not as against stockholders in a business corporation. The policy-holders are made by the respondent's charter members of the company. The bulk of the property of the company is derived from the policy-holders, and may be considered as held for them. At the same time that they have a common interest in the profits and losses of the business of the company, they are all of them creditors, either actual or potential.

But still stronger reasons present themselves against the validity of this transfer. The State has an interest in the matter. It has adopted a line of policy which is plainly expressed in the acts of the Legislature. A department of insurance has been created, and a chief officer of that department appointed who represents the State in matters within the scope of his duties as prescribed by the acts. Various regulations are made for the good of the public and the protection of the citizen. In this respect life insurance companies stand in a position different from that of ordinary corporations. The Legislature has said, in effect, that, owing to peculiarities either in their character or their management, life insurance companies must be subject to a constant supervision and to many restrictions. This effectually excludes them from that class of corporations which have the power, in itself exceptional in its nature, to sell or transfer all their property, under certain circumstances, against the will of the minority of their stockholders. Such a power would contravene, not only particular provisions of these acts, but their intent and purport. It would be impossible for the superintendent of insurance to properly exercise the powers vested in him if an insurance company, subject to the provisions of these acts, could, at the will of its stockholders and against the wishes of any of its policy-holders, turn over all its assets to another company, either under

the pretense of reinsurance or otherwise. For instance, by the 41st section of the act the superintendent is required to institute proceedings for the protection of policy-holders where he has good reason to believe that any company, organized under any law of this State and doing any business as a life insurance company, is either insolvent or in such a condition as to render its further proceedings hazardous to those holding its policies. It is difficult to see how he could do this if any life insurance company in the condition mentioned could withdraw itself from the operation of this section by making an agreement to turn over its property to another company in consideration of the reinsurance of its risks and the payment of its debts. Such a construction would not only be at war with the intent of the act, but it would nullify the 41st section so far as it relates to a large, possibly the largest, class of persons meant to be protected by its provisions. It follows that the transfer of the property of the respondent to the Mound City Life Insurance Company was illegal as against dissenting policy-holders of the respondent, and that the contract of December 13, 1873, so far as it attempted to turn over the assets of the respondent, was, as against such policy-holders, *ultra vires* and void.

As it was apparent that the court below had jurisdiction of the subject-matter, the particular proceeding, and the defendant, if the court thought that the allegations of the pleadings, instead of being, as they should be, clear and direct, were either defective or argumentative and ambiguous, it should have permitted the appellant to amend and to conform his petition to well-established rules. On the motion for judgment the facts were before the court, and it was error to dismiss the proceeding at once, or before the plaintiff had had an opportunity to amend.

The judgment of the court below, dismissing the petition, is reversed, and the case remanded to be proceeded with in accordance with this opinion. All the judges concur.