STATE OF MISSOURI, EX REL. H. A. HAEUSSLER, Appellant, *v.* JAMES G. GREER, Respondent.

### June 15, 1880.

Where a charter provides a method for the election of directors of the corporation, and further provides that the general law which makes charters subject to alteration shall not apply to this corporation, a change of the methods of such elections, made by the subsequent adoption of a State Constitution, does not impair the contract obligations or vested rights of stockholders, and an election for directors is properly held under the latter method.

APPEAL from the St. Louis Circuit Court, BOYLE, J.
*Reversed and remanded.*

BROADHEAD, SLAYBACK & HAEUSSLER, for the appellant: " 1. The provision in the charter in regard to the manner of selecting its managers did not vest a right in the individuals who might own the stock that could not be changed by the State. 2. The constitutional amendment neither impaired nor destroyed the powers of the franchise : it merely gave additional protection to owners of its stock, and provided an additional safeguard for citizens of the State who should deal with the institution. 3. The amendment was a mere police regulation, and a power or right that the State could not abandon to any corporation or private individual. 4. The Legislature has not the power to suspend the operation of the general law of the State in favor of a corporation any more than in favor of an individual, and the provision of the charter of the institution suspending the operation of sect. 8 of the act approved March 19, 1845, in respect to it, was void. — *Peters* v. *Iron Mountain R. Co.*, 23 Mo. 107 (end of opinion) ; *The State* v. *Matthews*, 44 Mo. 523, 530 ; *Washington University* v. *Rowse*, 42 Mo. 323 ; *Price* v. *Insurance Co.*, 3 Mo. App. 262 ; *Neal* v. *Ruggles* (Sup. Ct. Ill.), 11 Ch. Leg. N. 20 ; *Munn* v. *Illinois*, 94 U. S. 113, 155, 180 ; *Thorpe* v. *Rutland, etc., R. Co.*, 27 Vt. 140 ; *Christ Church* v. *Philadelphia*, 24 How. 300 ; *Butler* v.

*Pennsylvania*, 10 How. 402 ; *The People* v. *Commissioners*, 47 N. Y. 501 ; *The State* v. *Commissioners*, 8 Vroom, 228–241 ; *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 536 ; *The Commonwealth* v. *Farmers'*, etc., *Bank*, 21 Pick. 542 ; *Bank* v. *Attorney-General*, 3 Wend. 588 ; *Bank* v. *The State*, 4 Smed. & M. 439.''

FINKELNBURG & RASSIEUR, for the respondent : The change in the method of electing the managers of corporations provided for in sect. 6, Art. XII., of the Constitution of 1875, materially and fundamentally modifies and alters the rights of stockholders in controlling the affairs of corporations. — *Hays* v. *The Commonwealth*, 82 Pa. St. 518 ; *Dartmouth College* v. *Woodward*, 4 Wheat. 637 ; *Pittman* v. *Adams*, 44 Mo. 570 ; *The Commonwealth* v. *Claghorn*, 13 Pa. St. 133. The charter of the German Savings Institution having been granted long before the Constitution of 1875 went into force and effect, and without reservation of future control, created certain vested rights in the stockholders of that institution which the State could not alter, modify, or withdraw without their assent. — *Sloan* v. *Pacific R. Co.*, 61 Mo. 24 ; *Scotland County* v. *Missouri, Iowa & Nebraska R. Co.*, 65 Mo. 123 ; Aug. &. Ames on Corp., sect. 767 ; Cooley's Const. Lim. 279. The right of a majority in interest to control the election of every officer of the corporation was one of those vested rights, and the Constitution of 1875 can have no effect upon its exercise until the expiration of the present charter, which takes place on the first day of December, 1883. — *Webb* v. *Ridgely*, 38 Md. 364 ; *In re St. Mary's Church*, 7 Serg. & R. 517 ; *Mowry* v. *Indiana, etc., R. Co.*, 4 Biss. 83 ; *City of Covington* v. *Covington & Cincinnati R. Co.*, 10 Bush, 76 ; *Faulds* v. *Yates*, 57 Ill. 416. The constitutional amendment in question does not fall under the reserved power of States to regulate corporations and individuals, usually called " police power."— Cooley's Const. Lim. 572 ; *Gorman* v. *Pacific R. Co.*, 26 Mo. 441 ; *The State, ex rel. Pittman*, v. *Adams*, 44 Mo.

570 ; *Lake View* v. *Rose Hill Cemetery Co.*, 70 Ill. 194 ; *The People* v. *Jackson, etc., Co.*, 9 Mich. 307.

HAYDEN, J., delivered the opinion of the court.

This is an information in the nature of *quo warranto*, the relator claiming that he had been a director of the German Savings Institution, here called for brevity the bank, and that the defendant has wrongfully intruded into the office. The German Savings Institution was chartered by special act of the General Assembly, approved on February 4, 1853, as a banking corporation. The ninth section of its charter is as follows : —

" The stock and affairs of the institution hereby established shall be managed and conducted by nine directors, who shall be elected every second year, at such time and place, in the city of St. Louis, as the board of directors for the time being shall appoint, and shall hold their office for two years, and until others be chosen, and no longer ; and the election shall be held in such manner as said directors shall by ordinance or by-law prescribe, and shall be made by ballot, by plurality of the stockholders, allowing one vote for every share ; and stockholders not personally present may vote by proxy, made in writing directly to the person representing them at such election. In case it should happen at any time that an election of directors should not be made on any day it ought to have been made, the corporation hereby established shall not for that cause be deemed to be dissolved, but it shall and may be lawful on any other day to make and hold an election of directors, in such manner as shall be regulated by the by-laws and ordinances of said corporation."

By the next section it is provided that the seventh section of the first article of the act of March 19, 1845, which is to the effect that the charter of every corporation hereafter to be granted shall be subject to alteration, suspension, and repeal, etc., shall not extend to this corporation.

By the sixth section of Art. XII. of the present Consti-

tution, which took effect on the 30th of November, 1875, it is provided : —

" In all elections for directors or managers of any incorporated company, each shareholder shall have the right to cast as many votes in the aggregate as shall equal the number of shares so held by him or her in said company, multiplied by the number of directors or managers to be elected at such election ; and each shareholder may cast the whole number of votes, either in person or by proxy, for one candidate, or distribute such votes among two or more candidates ; and such directors or managers shall not be elected in any other manner. "

On the eighteenh day of February, 1879, at a regular election for nine directors of said corporation, at which election sixty-one stockholders participated, the relator, the owner of 166 shares of stock, offered to vote the same on the cumulative plan, by multiplying the number of shares by nine, and giving the total number of votes which he claimed to be entitled to cast, — viz., $9 \times 166 = 1,494$ votes, — and then offered to vote one-half of those votes — to wit, 747 votes — for himself as a director.    Three other stockholders, owning in the aggregate 380 shares, likewise offered to cumulate by casting nine times that number of votes — to wit, 3,420 votes — for relator as a director, which, together with the 747 votes offered by relator in his own behalf, and 94 votes cast for him on the regular plan, would have given him a total vote of 4,261 votes — enough to elect him as a director ; while upon the ordinary plan of counting one vote for each share, for one director, he received only 640 votes in all — not enough to elect him.    The canvassers rejected the cumulative votes as offered, and counted but 640 votes as cast for the relator. At the same election fifty-seven stockholders cast 3,327 votes in the ordinary way (one vote for each share) for this respondent as one of the nine directors to be elected, and a larger number of votes, in the same way, for eight other

persons, respectively; whereupon respondent was admitted as a director, and relator brought this writ, in the nature of a *quo warranto*, to test defendant's title to the office. There was judgment below for the defendant.

The question is whether this election should have been governed by the charter or by the section of the Constitution. It is contended by the defendant that the constitutional provision is a material alteration, modification, or amendment of the charter, and that the right to proceed according to the charter was a vested right of which stockholders in the bank could not be deprived; that stock in a business corporation is bought on the faith of the plan of business and scheme of management prescribed by the charter, and that these are elements of its value; that where, under the system which allows one vote a share, a number of persons control a majority of the stock, this right of control is a right of property inseparable from. the shares, and forming part of the consideration for their purchase. It is said that a fundamental principle of the organization of this corporation is that a majority of the stock should control every office of trust in the institution, and that when the relator and three other stockholders offered to vote nine votes for each share of stock owned by them, and, cumulating their votes, attempted to elect a director, they sought to deprive the majority of the stock of its essential power and to prevent it from operating as the stock of the corporation.

Unless it is admitted that the change proposed by the constitutional amendment would injuriously affect the actual value of stock in business corporations, it is not easy to see the force of these arguments. If the value of the stock would not be so affected, the argument of the respondent would seem to resolve itself into a mere complaint that stockholders situated as he is are deprived of power — of the gratification of exercising control. This element of power, apart from property, may have been an inducement to

purchase, but it would seem that its loss does not impair the obligation of the contract or deprive the stockholder of a vested right. The obligation still exists, and the right would not be impaired unless the property is injuriously affected. If there has been no loss in material value, it is difficult to see where lies the ground of complaint.

That there has been any such loss, it would seem impossible to prove. In the first place, the character of the influence exercised by a minority is not to be ascertained by taking exceptional cases. Its general influence is the question, and in most instances this amounts to no more than a right of the minority to be heard, and its consequences. The moral influence produced by an opposing voice — and this influence was probably one of the chief objects of the provision — avails merely by way of check or restraint. The power of control still remains with the majority in all but a few exceptional cases, possibly in all cases, provided vigilance is exercised by the majority such as it is one of the objects of the provision to secure. It is in the necessity for this increased vigilance, and in the delay and annoyance which arises, or is liable to arise, in the transaction of business where opposition has a voice, that the chief difference would probably be found. But it can hardly be claimed that a provision which makes vigilance and a constant attention to duty essential on the part of the managers of a corporation is an interference with vested rights; while the delay and trouble which come of opposition, however inconvenient they may be, certainly do not involve any alteration of the grant, in the sense intended by the Constitution of the United States. On the contrary, it may well be contended that these inconveniences are more than counterbalanced by advantages, and that the new method makes corporate property more valuable by making it more secure.

Be this as it may, it is a matter of history that under the system of close boards there was neglect and misman-

agement, resulting in disasters that led to attempts at reform. It was in the exercise of their power to regulate the civil institutions of the State, and in the use of that discretion the denial of which is inconsistent with civil government, that the convention undertook to check a great and growing evil by such means as they thought adapted to the end. Creditors and stockholders had suffered losses that were not the result of reverses in business merely, but apparently of the method of management. To deny the power of the State to make a change in this method seems equivalent to saying that the exigencies which arise and demand interference on the part of the local authorities for the protection of the people cannot be provided for by such remedies as are at hand. It is certainly with the lawmakers, not with the courts, to inquire whether the proper means have been chosen to accomplish the end.

In the case of *The State* v. *Mathews*, 44 Mo. 523, the change was merely legislative, not, as here, one created by the supreme governmental powers, and made applicable to all corporations existing by the laws of the State. Though additional burdens were there imposed, the laws did not, with such distinctness as do the regulations here, indicate a line of public policy adopted by the governing power. It was within the discretion of the convention to alter the method by which corporations were governed, and they must conform to those rules which the State thinks it is necessary to adopt. The latest exposition of the police powers of the States is contained in the decision of the Supreme Court of the United States in *Stone* v. *Mississippi*, 101 U. S. 814; and though that was not a case similar in its facts to the present, yet, if the limitations which are there laid upon the Federal powers of restraint are to be regarded, it would seem to follow that the convention was at liberty to make this regulation and to apply it, as the terms of the provision, which are most emphatic in their character, show that it was intended to be

applied, to existing corporations as well as those to be created in the future. It is not to be presumed that this mandate of the supreme authority of the State is of no force as applied to existing corporations. Courts that regard the true rules of constitutional interpretation are bound to give the Constitution all the efficacy which its words demand. The burden lies upon those who assert that there is a conflict between its provisions, thus interpreted, and the Federal Constitution, to make that conflict clearly appear. In our opinion, no such conflict exists. The legislative discretion of the convention was applied to the subject of the internal management of corporations of this State as a matter of local government, and whatever effect was produced upon existing rights of property was merely that remote effect which constantly results from changes in the regulation of the civil institutions of our States.

The case of *Hays* v. *The Commonwealth*, 82 Pa. St. 518, has been carefully examined. The power of the States to regulate their domestic institutions appears there not to have been considered in its bearing on the question. Weight also appears to have been attached to the peculiar provisions of the Constitution of Pennsylvania. For the reasons above given, we are unable to assent to the positions there taken, which the respondent cites and relies upon.

The judgment is reversed and the cause remanded. Judge BAKEWELL concurs; Judge LEWIS is absent.