JOHN K. CUMMINGS ET AL., Plaintiffs in Error, *v.* HENRY
J. SPAUNHORST ET AL., Defendants in Error.

### December 18, 1877.

1. Section 27 of article 12 of the Constitution of 1875, which provides that any president, director, manager, cashier, or other officer of any banking institution, who shall assent to the reception of deposits or the creation of debts by such banking institution after he shall have had knowledge of the facts that it is insolvent, or in failing circumstances, shall be individually responsible for such deposits so received and all such debts so created, contains apt and sufficient words creating in themselves a right of action which may be enforced by the ordinary remedies, under laws existing at the time of the adoption of the Constitution. To deny them efficiency is, in effect, to assume the power of suspending or repealing the provision, it being an established canon of constitutional construction to give all possible efficacy to the mandate of the sovereign authority.

2. The fact that the first clause of the section provides that the things which create a civil liability "shall be a crime, the nature and punishment of which shall be prescribed by law," — the two clauses being separate and distinct, — does not create a necessity for further legislation in order that the latter clause may be enforced. The latter cannot be suspended or nullified because the former is referred to legislative action. The Convention, moreover, decided this question by expressly affixing the requirement of future legislation to the crime, and refusing to affix any such requirement to the civil liability.

3. Courts, in construing constitutional provisions, when compelled to declare that full and detailed effect cannot be given to a certain part, will not declare that no effect can be given to any part, but will give the provision all the effect which they can.

4. The fact that the bank whose officers are sued in this action was operating under a special charter does not affect such officers' liability under section 27; nor does this liability impair the obligations of the contract between the bank and the State.

5. The provisions of its charter cannot exempt a bank or its officers from regulations made in the exercise of the police power of the State; and regulations so made do not, because they incidentally affect it, impair the obligation of a contract.

ERROR to St. Louis Circuit Court.

*Reversed and remanded.*

M. McKEAG, for plaintiffs in error: The charter of the bank could not exempt it from regulations made in the exercise of the police power of the State. — Cooley's Const.

Lim. 575; *The State* v. *Matthews*, 44 Mo. 528. Where the officers of a corporation perpetrate a fraud in its name, they are responsible to the party injured, in a civil action for the damage. — 7 Mass. 187; *Salmon* v. *Richardson*, 30 Conn. 373. The remedy against the bank need not be exhausted before proceeding against the officers. — *Mokelumne* v. *Woodburn*, 14 Cal. 167; *Davidson* v. *Rankin*, 34 Cal. 505; *McLaine* v. *Monroe*, 30 Mo. 469; 34 Mo. 277. The facts stated in the petition constituted a cause of action at common law. — *Clark* v. *Brown*, 18 Wend. 220; *Stanley* v. *Stanley*, 26 Me. 196. No further legislation was necessary to render section 27 of article 12 of the Constitution operative. — *The State* v. *Neal*, 42 Mo. 123; *St. Joseph, etc.*, v. *Patten*, 62 Mo. 444. No peculiar legislation for its enforcement was necessary. — *Brien* v. *Williamson*, 7 How. Miss. 14.

Farish & Griffin, for defendants in error: Legislation was necessary to make section 27 of article 12 of the Constitution of 1875 operative. — Cooley's Const. Lim. 35, 36, 78, 79; Jameson's Const. Conv. 83; Jameson's Const. Conven., sec. 429; Conkling's Pr. 138; *The United States* v. *Bevans*, 3 Wheat. 336; *St. Joseph & Denver R. Co.* v. *Buchanan County*, 39 Mo. 485. The general words of a penal enactment must be restrained for the benefit of him against whom the penalty is inflicted. — Dwar. on Stat. 736; Sedgw. on Const. Law, 324. The bank whose officers are here sued was operating under a special charter, and to enforce such a liability against such officers would violate the obligations of the contract between the bank and the State. — 21 N. Y. 10; 29 Barb. 369; Hill. on Tax. 16, note; *The State* v. *City of Hannibal*, 37 Mo. 265.

Hayden, J., delivered the opinion of the court.

The questions here involved arise on demurrer to a petition which alleges that on March 2, 1876, the plaintiffs deposited with and loaned to the Central Savings Bank, a

corporation under the laws of Missouri, and a banking institution, $5,000 for six months; that at that date, and before, the bank was insolvent and in failing circumstances; that the defendants, and each of them, had knowledge of these facts, and concealed them from plaintiffs, who were ignorant thereof, and that the defendants, with such knowledge, assented to the reception of this deposit and the creation of this debt by the bank; that by reason of the premises the defendants, and each of them, became liable for said sum, etc. The object of the action is to hold the defendants to individual liability, under section 27 of article 12 of the Constitution of this State, which section reads as follows:

"Sec. 27. It shall be a crime, the nature and punishment of which shall be prescribed by law, for any president, director, manager, cashier, or other officer of any banking institution, to assent to the reception of deposits, or the creation of debts by such banking institution, after he shall have had knowledge of the fact that it is insolvent or in failing circumstances; and any such officer, agent, or manager shall be individually responsible for such deposits so received, and all such debts so created with his assent."

The present Constitution went into effect on November 30, 1875.

The grounds of demurrer were that the petition failed to state facts sufficient to constitute a cause of action, in this: First, that the section just quoted is not effectual in itself to create a right of action that can be enforced by the courts without further legislation; second, that this section does not apply to the corporation named, as that was created by special charter in 1857, and that to give the section the effect contended would impair vested rights. The questions were presented to the general term, and then, in accordance with its opinion, upon the first ground the demurrer was sustained by the court below.

In considering the first ground of demurrer, it is essential

to a right view of the important question raised by it that it should be approached from the proper point.

To take this provision and inquire whether, as it stands, it is self-enforcing; then, as a guide by which to answer this question, to resort to generalizations in the text-books upon the nature of constitutional provisions, is to leave a fallacy lurking in the method of investigation. In this way we exclude from the case two important elements, — the bearing of the laws existing at the time the Constitution went into effect, and the light thrown upon the question by other provisions of the Constitution. As this instrument itself provides, as one means of carrying the Constitution into complete effect, that all laws in force at its adoption, which are not inconsistent with it, shall remain in full force until altered or repealed, and in the same section recognizes two distinct classes of constitutional provisions, — those which require new legislation to enforce them, and those which do not, — it is obvious that the laws existing at the adoption of the Constitution must be considered as in view of its framers, and may have an important bearing upon the question to be decided. Sched., sec. 1.

Again, to ask if the provision is self-executing, and then to start with the postulates that a constitution is a body of general principles and maxims of government, that the proper function of the convention which frames it is to declare such principles and such maxims, is to leave the instrument which requires construction, and abandon actual results for *à priori* reasoning. If, as we may see from our recent constitutions, the people, speaking through conventions, have seen fit to limit the power of legislatures, and have seen fit to deal less in general maxims and to proceed further in the direction of ordinary legislation, it is not for the courts to ignore this feature, thus appearing on the face of the instruments they are required to construe. But still another element, which the courts must regard, is practically eliminated if we state the question in the form in which the

defendants in error have put it. It is often said that it is a delicate exercise of the judicial power, and one to be cautiously used, to declare an act of the Legislature unconstitutional. If so, it is with extreme caution, and only on well-ascertained grounds, that the courts should declare that inoperative which there is reason for supposing to be a fiat ot the sovereign power. In cases involving the unconstitutionality of laws, the courts have to pronounce upon two or more clashing provisions. The judicial tribunals there proceed upon the basis of inconsistency, and have the palpable ground to tread upon that where the inconsistency is plain the legislative act must yield to that of the superior authority. But as there is no power which can limit the extent to which the Constitutional Convention may legislate upon subjects over which it has control, there is here no question of antagonism; and a failure to recognize its expressed will amounts, on the part of the courts, to the exercise of a veto upon the acts of the sovereign authority. It is true that the question is still for the decision of the courts, and that the question is, after all, one as to the construction of a written instrument; but the discussion in such cases must always start from the point of view that the courts are obliged to give effect to the fiat of the sovereign power, when that fiat is intelligently expressed, and that any other doctrine implies that the courts may say, by actual decision, how far constitutional conventions may proceed in the direction of ordinary legislation and how far they may not, and this after the Constitution has been adopted. Another assumption, which it is not legitimate to make, is that because future legislation is proper, or even necessary, under a provision for the purpose of adjusting ultimate rights and liabilities of parties, therefore the provision can have no immediate efficacy.

The anticipation of future legislation is one thing, the intent to keep in abeyance all present operative force another. It is not sufficient to say that the framers of the

Constitution anticipated legislation, for there may be legislation in any case where it is not expressly or by implication forbidden. To settle ultimate rights and adjust matters of detail, legislation will generally be appropriate, and to this extent may be anticipated. But the question recurs whether the particular provision creates an obligation, or whether, no act being passed, it remains dead in the Constitution. It is not easy to discover the sequence of the argument that because its full and detailed effect cannot at once be given to every part of a provision, therefore no effect can be given to any part of it.

If such a rule were applied to acts upon the statute-book, they would often fail where they now are substantially carried into effect.

By an established canon of constitutional construction, courts, when compelled to declare certain parts of an act of the law-making power insufficient or of no obligation, are careful to give to the act all the efficacy which they can.

In the present case, the defendants in error urge that further legislation is necessary to settle the rights of the defendants in the civil proceeding among themselves, to decide whether, in any event, they have recourse upon the bank, etc. By parity of reasoning, if the Convention, having a special object in view, creates in precise terms an obligation in favor of class A against class B, the courts are to nullify this fiat of the sovereign will because there has been no definition of the rights of class B, in certain contingencies, against class C. This would, indeed, be an assumption of power upon the part of the courts, since in few cases of any complication could ingenuity fail to discover some contingency for which no provision had been made. Certainly, where the words *ex vi terminorum* have, as applied to one part of a scheme, a given force, their efficacy cannot be taken from them because future legislation may be necessary to carry into effect other parts of the scheme, or merely to settle ultimate liabilities of parties.

The question to be here decided, then, is not whether all liabilities and rights, in all contingencies, are provided for by the section quoted, but whether the words, as they stand, viewed in the light of other provisions of the Constitution, and considered in reference to the laws existing at the time the Constitution went into effect, create the particular liability sought to be enforced in this action. It would consume too much space to select and comment upon the various provisions of the Constitution which became at once of binding obligation. It may be noticed that where such provisions occur, they are expressed in simple and untechnical language, and without the tautology and involution which so frequently appear in ordinary legislative acts.

The present section has two distinct parts, — that relating to the crime, and that relating to the civil liability. It is argued by the defendants in error that these run into each other, and that no effectual separation exists. But effectual separation is not, in legal view, created by punctuation and capital letters, which are often left to the printer, but by essential meaning. The crime is one thing, the civil liability another. It probably did not escape the Convention how difficult is the conviction of offenders, in case of prosecutions of a similar nature, even where legislative precautions are taken; and, accordingly, the second clause, relegating the matter to the civil forum, is put in to secure the almost certain infliction of a penalty.

The first clause provides merely for the crime; the second has a double aspect, and, while it punishes, confers a right. Penal as to offenders, it is remedial as to those whose trust has been betrayed. Thus the two clauses are distinct; and, as we have seen, one fiat of the Convention cannot be nullified by the fact that another is referred to legislative action. All possible efficacy must be given to the mandates of the sovereign power.

The argument, moreover, which is drawn from the fact that further legislation is required by the first part of the

section rests upon the basis that the two parts are but one matter, and when the two are shown to be distinct, that argument falls.   But, besides this, that argument ignores one of the most marked features of the section, — that is, that the requirement of further legislation is affixed to the first clause, thus : "It shall be a crime, the nature and punishment of which shall be prescribed by law," etc.   It is obvious that where a qualifying clause is intended to relate to a whole sentence, that qualifying clause will not be limited to a part of it ; and, accordingly, if it is so limited, the limitation must be presumed to be *ex industria*.

It was for the framers of the Constitution to say whether further legislation was necessary, or whether the second clause is one of the many clauses which require no future action ; and if meaning is to be gathered, not from isolated words, but from their arrangement, their sequence, their logical interdependence, the conclusion must be that the mind of the law-giver was fixed upon the thought that it was the crime exclusively that required future legislation.   If this was not the thought, then the expression fails to represent what was.   But it is by the words as they stand that we must be guided.   As that construction which ignores the meaning of any word is so far vicious, so must it be a vicious construction which, especially in instruments so carefully prepared as constitutions are supposed to be, refuses to give effect to the logical relation of clauses.

But, apart from the facts that the Convention used apt words in an apt place to indicate their intent, and forebore to use those words in another place, it is obvious that legislation in detail is necessary in case of the crime, and it is not obvious that legislation in detail is necessary as to the civil liability.   The primary object of the Convention was to punish, and to check a great and increasing wrong by punishment.

To affix a penalty and make that penalty recoverable, upon the facts furnished by the section, by civil action, was

a simple thing. We are not to withdraw the legal mind from the section and then complain it is a blank, or to suppose that the lawyers in the Convention were ignorant of the elements of law. We may find, then, that the section contains the essentials of a cause of action as prescribed by the primary maxims, — the *quis, quid, coram quo, quo jure petatur et a quo.* We may also find, as a conclusion from elementary principles, that where there was a common reception, or assent to reception, of a deposit, under the circumstances prescribed, there would be a joint liability on the part of those so assenting. To show that there is sufficient in the section to create a right of action, and that a remedy is afforded, it would not be necessary even to resort to the Practice Act.

In point of fact, however, the Practice Act was in force, and is to be considered as having been in view of the Convention when it framed the present section. By that act, what is called a civil action is the one form of action allowed in this State for the enforcement or protection of private rights, and the redress or prevention of private wrong ; and in the petition in a civil action nothing is to be averred but the substantive facts. Wag. Stat. 999, sec. 1 ; p. 1013, sec. 3. Putting the two things together, the section before us and this act, it is difficult to see what more is needed to give effect to the fiat of the Convention, and secure the enforcement of the penalty which it was their will to impose.

But, giving the words of the section their natural and proper meaning, they would, the facts existing, raise in favor of the depositor a right of action and afford a remedy, even under the rules which prevailed as to actions at the common law. Where a statutory enactment imposed a penalty, debt on the statute lay at suit of the party aggrieved. As a general rule, debt lay for a sum certain, but it lay for a sum capable of readily being reduced to a

certainty, especially where by the averment it could be shown to be capable of such reduction. 3 Lev. 429 ; Bull. N. P. 167. " If a statute prohibits the doing of a thing," says Buller, " under a certain penalty, and prescribe no method of recovery, the party entitled may bring debt." Bull. N. P. 168 ; *Rockwell* v. *The State, etc.*, 11 Ohio, 130. An l " if a statute prohibit the doing of an act under a penalty or forfeiture, to be paid to a party grieved, and do not prescribe any mode of recovery," says Chitty, speaking of debt (1 Chitty's Pl. *112), " it may be recovered in this form of action." In such cases the obligation springs from the statute and the prohibition in it, and everything necessary to its enforcement is in existence. This method of enforcing a penalty is well known, and is one form by which the general government has frequently secured execution of its mandates. Such enactments, whether created by the sovereign power or by the ordinary law-making body, can hardly be expected to adjust all the civil rights of the offender ; and it would seem that he is not the proper person to urge that the provision which punishes him is invalid because it does not afford a remedy by which he can recover against a third party a penalty which the law has imposed upon him.

Unless, then, by a forced construction we take from the words of the section a meaning which they adequately and aptly express ; unless we are prepared to hold that that must be insufficiently stated which is stated without verbiage, in plain and untechnical words, there was no necessity for future legislation. The penalty to be recovered by civil action is distinct from the crime, and for the purpose of the former the latter is to be regarded merely as a prohibition. There is nothing in the section requiring a conviction as a precedent to civil liability ; nor is there any thing which requires the corporation or banking institution to be first pursued.

On these points the section is not open to construction. The intent of the Convention is plain, and is expressed in words which argument would fail to make plainer.

The cases chiefly relied on by the defendants in error may be briefly noticed. In *Groves* v. *Slaughter*, 15 Pet. 449 (decided in 1841), the Supreme Court of the United States, acting in some sort, as it is obliged to, as an international tribunal, was evidently largely influenced by the course of Mississippi as a State. The State, by its own action, had to a certain extent made what the Supreme Court calls "legislative interpretations" of the Constitution for itself. Yet public opinion and the course of policy was unsettled, and the manner in which this affected the decision may be seen from the closing sentences of Judge Thompson, in delivering the opinion of the court. Even so far as the question was one of construction, reference was made to the earlier Constitution of 1817, which referred directly to legislative action, and the two provisions were considered together. From the opinion, even thus qualified, Judges Story and McKinley dissented. Afterwards the Supreme Court of Mississippi passed upon the same question, and in numerous and uniform decisions held this provision in the Constitution of their State to be self-operative. Yet the Supreme Court of the United States, without reëxamining the question, adhered (*Rowan* v. *Runnel*, 5 How. 134) to its former decision.

The case of *The People* v. *Supervisors of Ulster County*, 3 Barb. 332, can hardly be considered in point, except on the supposition that the words "as shall be prescribed by law" are to be inserted in the second clause of the section in our Constitution. The clause, moreover, in that case construed presents in terms an alternative, and leaves the choice to legislative action. None of these authorities have much bearing upon the question here involved, while the character of recent constitutions must necessarily modify even the general views formerly entertained in regard to the

self-operation of provisions.   See Const. of Ill. of 1870,
and decisions under it; *The People, ex. rel. Ely*, v. *Rum-
sey*, 64 Ill. 44 ; *Chance* v. *County of Marion*, 64 Ill. 66 ;
*O' Conner* v. *Leddy*, 64 Ill. 299 ; Const. of Mo. of 1865 ;
*The State, etc.*, v. *Bernudy*, 36 Mo. 279 ; *The State*
v. *Neal*, 42 Mo. 119 ; *St. Joseph Board of Public Schools* .
v. *Patton*, 62 Mo. 444.

It is next claimed that the directors who are here sued
accepted their positions and held them under a special char-
ter, and cannot be affected by a subsequent act which
increases their liability.   It is claimed that this liability
would impair the obligation of the contract between the
bank and the State ; but in what way, the defendants in error
do not show.   A certain act is forbidden, and a penalty is
imposed upon certain persons who violate the prohibition ;
and instead of providing that the penalty shall go to the
State, or that an informer may sue for and recover it, this
clause incidentally affords a remedy to the injured party, as
the old statutes often did to the party aggrieved.   This has
nothing to do with the franchise of the corporation ; but it
would not matter if the corporation were incidentally
affected.   This corporation is subject, as are its officers, to
the police power of the State, and the provisions of its
charter cannot exempt it from regulations made in the exer-
cise of that power.   *Thorpe* v. *Railroad Co.*, 27 Vt. 140 ;
*Peters* v. *Railroad Co.*, 23 Mo. 107; Cooley's Const.
Lim., 3d ed., *573.   Nor need the regulations be any
more distinctly made, in the exercise of the police power,
than as indicating an intent to carry out a policy which the
State deems essential for the protection of rights in prop-
erty ; and regulations so made do not, because they inci-
dentally affect it, impair the obligation of a contract.   *The
State* v. *Matthews*, 44 Mo. 523 ; *Price* v. *Insurance Co.*,
3 Mo. App. 262.

It follows from what has been said, that the judgment
rendered in the court below, in favor of defendants upon the

demurrer, must be reversed.  This will be done, and the case remanded, to be proceeded with in accordance with this opinion.

All the judges concur.