THEODORE Z. BLAKEMAN, Respondent, *v.* WILLIAM H. BENTON, Appellant.

### May 25, 1880.

1. Where bonds are issued by a corporation while double liability attached to its stock, the holder of such bonds, though he became such after the repeal of the double-liability clause, may enforce the liability against a stockholder.

2. The double liability of a stockholder is not a penalty, but a right arising out of contract, and the assignee of the obligation of the corporation takes all the right of the assignor.

3. Railroad corporations chartered after the railroad corporation act of 1855 are relieved from the liability imposed by the general corporation act.

4. The provisions of sect. 6 of Art. VIII. of the Constitution of 1865, as to double liability, were not carried into effect until the passage of the act of March 19, 1866, and the double liability did not attach in favor of those who became creditors prior to that date.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Reversed and remanded.*

CHESTER H. KRUM and PATRICK & FRANK, for the appellant: The bonds were issued January 1, 1866. At that date there had been no legislation to enforce the double-liability provision of the Constitution of 1865. There was, therefore, no double liability under the Constitution of 1865 at the date of the issue of the bonds. —*Fusz* v. *Spaunhorst*, 67 Mo. 256 ; *The People* v. *Commissioners*, 15 Mich. 347 ; *The People* v. *Supervisors*, 3 Barb. 332 : *Groves* v. *Slaughter*, 15 Pet. 449 ; *French* v. *Teschmaker*, 24 Cal. 518. The liability created by the Constitution of 1865 was totally extinguished by the amendment of 1870. — *Schicker* v. *Ridings*, 65 Mo. 215. In so far as the act of March 19, 1866, operated to change the charter of the corporation by imposing a double liability on account of stock held in such corporation, it was void as against the railway corporation and the stockholders. — *McCracken* v. *Hayward*, 2 How. 612 ; *The People* v. *Plank-road Co.*, 9 Mich. 285 ; *Ireland* v. *Palestine Co.*, 19 Ohio St. 373 ; *Lamman* v. *Lebanon R. Co.*, 30 Pa. St. 42. Under the General Laws of 1855, a stockholder in a street railway company was liable on the stock only for sums remaining unpaid on such stock. — *St. Louis R. Co.* v. *Railroad Co.*, 2 Mo. App. 69 ; *St. Louis, etc., Co.* v. *Donahoe*, 3 Mo. App. 559.

HITCHCOCK, LUBKE & PLAYER, H. A. HAEUSSLER, and C. O. BISHOP, for the respondent: The repeal of the double-liability clause in the Constitution of 1865 did not affect any right or liability theretofore existing. — *Provident Savings Instn.* v. *Jackson*, 52 Mo. 562 ; *Hawthorne* v.

*Calef*, 2 Wall. 10. A transfer of stock for the purpose of evading a liability is void. — *McLaren* v. *Franciscus*, 43 Mo. 452; *Provident Savings Instn.* v. *Morton*, 52 Mo. 557.

HAYDEN, J., delivered the opinion of the court.

This case comes up on an agreed statement of facts, the substance of which is as follows: On March 5, 1877, the plaintiff's intestate recovered a judgment against the Bellefontaine Railway Company for $13,158.60, upon bonds of the company of $1,000 each, issued on January 1, 1866. On this judgment execution was issued on March 12, 1877, and returned *nulla bona*. On June 7, 1869, the defendant received a certificate for seven hundred and thirty-four shares of stock in the railway company, of which shares the par value was $100, and upon which was then paid $67 a share. On May 22, 1876, in a suit of Benton against the Bellefontaine Railway Company, the present defendant obtained judgment for the amount of $14,913.10, on which execution was returned *nulla bona*. In April, 1876, the present defendant obtained judgment in the court below against the same company for $10,088.33, upon which $2,838.50 was realized. The defendant is the owner of an unpaid note of the company for $2,500, of date October 4, 1875.

The record of proceedings of the board of directors of the railway company shows that the company was organized under its charter (Sess. Acts 1864, p. 488) in March, 1864; that on February 11, 1865, the defendant subscribed for five hundred and eighteen shares of stock; that on September 20, 1866, there was a resolution of the board of directors to increase the capital stock from $100,000 to $200,000, and to issue the increase *pro rata* among existing stockholders. Certificates were issued accordingly, and shareholders voted on the new basis, but the question of the increase was not submitted for action to the stockholders. The defendant received his proportion of the new shares

and held them, voting accordingly down to the time when the company became insolvent. Other facts, as far as necessary, are stated below. The trial court awarded execution for $16,236.99.

It appears that the bonds sued on were issued on January 1, 1866, and it is contended that thus they were a subsisting indebtedness before the act of March 19, 1866 (Gen. Stats. 1865, p. 328, sect. 11) carried the double-liability clause of the Constitution of 1865 into effect. But if a double liability existed here, it existed by reason of the General Law of 1855 (Rev. Stats. 1855, p. 372, sect. 13), imposing that liability in case of "all corporations hereafter created by the Legislature, unless otherwise specified in their charter," etc. This question is examined below.

The plaintiffs did not acquire these bonds, on which they obtained judgment, until after the adoption of the amendment to the Constitution of 1865, by which amendment the double-liability clause was repealed. Hence, it is argued, the plaintiffs were not creditors at any time when a double liability existed, and there was no contract between them and the company whose obligation could be impaired. It is said that *Hawthorne* v. *Calef*, 2 Wall. 19, and *Provident Savings Instn.* v. *Jackson Place Rink*, 52 Mo. 552, are not in point, since, in the case at bar, the creditor did not become such during the time the double-liability clause was in force, so as to make that provision a part of the contract; that the same reasoning which excuses a stockholder, who becomes such after the repeal, from liability for debts contracted before the repeal, must limit the liability of an existing stockholder as against one who becomes a creditor after the repeal. This reasoning leaves out of view the fact that the assignee stands in the shoes of his assignor. The double liability here in question is not a penalty. It is a right arising out of contract and of a policy which makes stockholders *quasi* partners for certain purposes. The bonds are put into market on this basis. The holder has a

right to look to this security, and it is an element in the value of the bonds upon which the purchaser may rely, and for which, it may fairly be considered, he pays an additional price. In any event, being a contract-right affecting property, it is assignable. The purchaser of the bond becomes such, not on the basis of a new contract, — for as to terms there is no new contract,— but merely as the holder of a contract, all the terms of which have before been settled. The obligation of the contract, on the faith of which he bought, is thus impaired in his hands, as it would have been in the hands of the first holder. These principles are necessary deductions from the cases just cited.

The essential question, then, is not whether the double-liability provision existed when the plaintiff became the holder of the bonds, but whether it existed when the contract, of which this liability might become an inherent part, was made. If, under its charter and the laws existing when this company became a corporation, double liability attached to its stock, we think the fact that the plaintiff purchased the bonds after the repeal of 1870 in no way relieves the appellant. The serious question is, whether, as to double liability, the corporation here involved is governed by the general corporation act of 1855, or by the general railway act of 1855. If by the former, double liability attaches as an attribute of its stock; if by the latter, there is no such consequence. There is no question as to when the appellant became a stockholder.

It is true, as the plaintiff maintains, that this company could not have been organized and operating both under the general railroad law and under a special charter. It was clearly a " corporation hereafter created by the Legislature," to use the words of the thirteenth section of the Corporation Act of 1855 ; and, moreover, there was no exemption from double liability in its charter. But it was a railroad corporation, and the general act of 1855 on the subject of such

corporations shows that in regard to them the policy of the Legislature was different from that pursued as to ordinary corporations. There is to be no double liability as to railroad corporations ; so, in effect, the Legislature says, using, in the fifty-seventh section, the broadest language. The tenth section provides (Rev. Stats. 1855, pp. 413, 438) :

" Each stockholder of any company formed under this act shall be individually liable to the creditors of such company, to *an amount equal to the amount unpaid on the stock held by him, for all debts and liabilities of such company, until the whole amount of the capital stock so held by him shall have been paid to the company.*"

Sect. 57 of the same law provides that " all existing *railroad corporations* within this State, and *such as are or may be hereafter chartered*, shall respectively have and possess all the powers and privileges contained in this act ; and they shall be subject to all the duties, liabilities, and provisions, not inconsistent with the provisions of their charter, contained in this act."

The Bellefontaine Railway Company was not "formed under this act," but it was a railroad company thereafter chartered ; and when the corporators procured their special act, it was unnecessary to have inserted in their charter a special exemption from the double liability imposed by the general corporation act, since the two sections above quoted made the exemption. It is in connection with these sections that the charter must be construed, and virtually they form a part of it. They show the State policy as to future railroad companies.

The question as to the section providing that the charter of every corporation granted after the passage of the act shall be subject to alteration, suspension, or repeal, need not be discussed. Rev. Stats. 1855, p. 371. It is clear that sect. 6 of Art. VIII. of the Constitution of 1865 needed legislation to give it efficacy, so far as existing corporations

were concerned. No amount is even fixed by the provision; and its terms may be contrasted with those of sect. 27 of Art. XII. of the present Constitution. *Cummings* v. *Spaunhorst*, 5 Mo. App. 21. The provision of sect. 6 of Art. VIII. of the Constitution of 1865 was: " Dues from private corporations shall be secured *by such means as may be prescribed by law;* but in all cases each stockholder shall be individually liable over and above the stock by him or her owned, and any amount unpaid thereon, in a further sum *at least* equal in amount to such stock." This provision was not carried into effect by legislation until the passage of the act of March 19, 1866. As the bonds were issued on January 1, 1866, they stood upon the same basis as any prior obligation of the company which had been incurred under its charter, and before the Constitution of 1865 took effect. We have already seen that it was the condition of things at the time the bonds were issued that determined the question of double liability, not the condition of things when the plaintiff became the owner of the bonds. As the appellant cannot get rid of the liability by resorting to any other test than that which determines the obligation of the contract, so he is entitled to have this test applied in his favor. The rule must work both ways.

As no liability of this kind existed when the debt was contracted, no liability of the stockholder afterwards arose in favor of the holder of such indebtedness. The act of March 19, 1866, could have no retroactive effect. Thus, the creditor was entitled to the statutory right neither by virtue of any act of 1855 nor under the Constitution of 1865.

The judgment is reversed and the cause remanded. The appellant is liable for sums unpaid on the stock on the basis of single liability only. He is entitled to offsets under the rule down in *Webber* v. *Leighton*, 8 Mo. App. 502. Upon the present offsets we do not undertake to pass, as under the ruling of the court the respondent may have not cared to question these.

If, after deducting the amount paid and all valid offsets, there remains nothing due from the appellant, the proceeding should of course be dismissed.    Judge BAKEWELL concurs ; Judge LEWIS is absent.